[Crim. No. 8055.   Second Dist., Div. Four.   May 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS D. KRAMER, Defendant and Appellant.

Thomas D. Kramer, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

THE COURT.—By information filed by the district attorney, Thomas D. Kramer was charged in Count I with the crime of armed robbery and in Counts II to V, inclusive, with the crime of forgery in violation of section 470 of the Penal Code. Defendant was also charged with one prior offense, the crime of issuing a check without sufficient funds on or about April 17, 1958. Defendant pleaded not guilty and denied the prior conviction.

At the time of trial defendant's attorney made a motion to be relieved upon the ground that he could no longer continue to represent defendant; he asserted defendant was insisting upon acting in his own behalf by such actions as filing independent petitions for writs of habeas corpus. The trial judge made every effort to have defendant either employ private counsel or if he did not have the funds with which to do so to accept an appointment by the court of the public defender. Defendant rejected these efforts and as the trial judge put it upon the hearing of the motion for a new trial, "we have here a young man who simply apparently enjoyed the drama of representing himself." As the trial progressed and defendant found himself more and more hopelessly incapable of defending himself, he then requested counsel to be appointed to help him, which the court quite properly refused. The case was tried to a jury and the jury found defendant guilty on all counts and fixed the degree of the robbery charged as robbery in the first degree.

On the motion for new trial the court again advised defendant that he should be represented by counsel and succeeded in inducing him to accept the appointment of the public defender. Even at this stage of the proceedings, however, defendant insisted on "directing" his attorney as to what should be said to the court in connection with the motion for new trial.

The trial court called attention of the public defender to the fact that the identification of defendant on the robbery count had not been positive, and upon that basis, and despite the strongly incriminating evidence which had been received against him, granted the motion for a new trial with respect to the charge of armed robbery. With respect to the four remaining counts of forgery and the finding of the prior conviction to be true, the judge declared the evidence to be overwhelming and stated that he saw no purpose in granting the motion for new trial as to these counts. At this point defend-

ant discharged the public defender and asked permission to argue the motion for new trial which the court permitted.

Motion for new trial was denied, as was defendant's application for probation. Defendant was sentenced to state prison on each of the four counts, the sentences to run concurrenlty. On motion of the district attorney, the robbery count was dismissed. Defendant was also found guilty of a violation of probation on a prior offense and was sentenced to state prison on each of the four counts, the sentences to run concurrently.

Defendant applied for appointment of counsel to assist him on the appeal. This court, having made an independent investigation of the record and having determined that it would be neither advantageous to the defendant nor helpful to the court to have counsel appointed, denied the application, whereupon defendant prosecutes this appeal in propria persona. Defendant was notified and given ample time to file a brief. None has been filed; however, we have given the appeal full consideration.

■■■ On or about April 10, 1961, Leonard M. Tucker was at his home during the evening hours. At about 10:30 p. m. when he was prepared to retire the doorbell rang and two men gained access to the house feigning a scavenger hunt. One of the men pointed a gun at him, turned him around and marched him down the hall into the den. There he had the victim lie down on a couch with some pillows over his head where he was kept for approximately two hours while the robber and his aides ransacked the house.

The victim was never able to positively identify defendant as one of the two men. There was definite proof that credit cards taken in the robbery had been used through forgeries and various purchases made from them. A handwriting expert gave his opinion that the person responsible for the signatures of Mr. Tucker, used in connection with the credit cards, were all written by one and the same person and he gave as his qualified opinion that exemplars of defendant's writing were in all probability written by the same person who had signed Mr. Tucker's name on the credit card purchases. The representatives of two of the firms from whom merchandise was purchased, while stating that defendant resembled the man who presented the credit cards to them, were unable positively to identify defendant.

A rent-a-car company man testified that defendant rented a car from him in the middle of April. A police officer of the city of Oxnard testified that on April 24 this car was observed

by him to be parked in an alleway behind the "Club Vegas" at 4 o'clock in the morning. He noted that the motor was warm and saw no registration in the vehicle. He kept the car under surveillance and observed a man, subsequently identified as defendant, get in the car and drive off without turning on the car's lights until it had reached the highway. The officer followed the car and pulled it over to investigate. He engaged defendant in conversation during which defendant asked the officer if he would like to make a thousand dollars. Upon further inquiry defendant said, "Well, I want to steal something; don't want to murder anyone or anything like this; I just want to steal something." When the policeman asked him what he wanted to steal he said "money." When he was asked "from where" he indicated "the immediate area of right here. . . ." The officer then asked defendant to accompany him to the police station but before going arranged to park defendant's vehicle in a gas station.

The officer asked defendant if he would mind if he inspected the vehicle while he locked it. Defendant told him he had nothing to hide and to go ahead. In the vehicle the officer found some cases of liquor and an invoice covering some of the liquor issued in the name of Mr. Tucker. There was also an extra license plate on the floor of the trunk. At the police station credit cards issued in the name of Mr. Tucker were found among defendant's personal property.

When defendant was asked concerning the liquor invoice in the name of Mr. Tucker he advised the officer to forget the invoice, just put it in his pocket and forget it. When the officer told him they would have to talk to Mr. Tucker and find out why defendant had his identification cards defendant stated, "If you do that you are going to get me some time in prison and get the Los Angeles Police Department involved in this." Defendant first asserted Mr. Tucker was a friend of his and later denied that he knew him. He also stated that if the police were to call Mr. Tucker they would find that his credit card had been stolen but he denied he had been the one to steal it. He then offered the officer two hundred dollars if he would let him go. To one of the interrogating officers he stated, "If you can get me identified on the Emco credit vouchers they might nail me on that one. . . ." Defendant acknowledged to another officer that he had made about ten thousand dollars off the credit cards. He denied, however, that he had committed the robbery.

Defendant took the stand in his own behalf. A review of

the transcript of the proceedings reveals that defendant received a fair trial; that the evidence overwhelmingly supports the verdict of the jury; and that the trial judge accorded defendant every consideration and displayed a remarkable degree of patience despite the very trying conditions caused by defendant's personal conduct during the trial. There was no error and the appeal is entirely without merit.

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied July 18, 1962.